UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADEM SELIMAJ,

                Plaintiff,

      v.

NANCY A. BERRYHILL,
Commissioner of Social Security,

                Defendant.

No. 17-CV-3389 (KMK)

OPINION & ORDER

---

Appearances:

John J. Moran, Esq.
Marks, O'Neill, O'Brien & Courtney, P.C.
Elmsford, NY
*Counsel for Plaintiff*

Charles E. Binder, Esq.
Law Offices of Charles E. Binder and Harry J. Binder, LLP
New York, NY
*Counsel for Plaintiff*

Susan D. Baird, Esq.
United States Attorney's Office
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Adem Selimaj ("Plaintiff") brings this Action against the Acting Commissioner of Social Security ("Defendant" or the "Commissioner"), pursuant to 42 U.S.C. § 405(g), challenging the decision of an administrative law judge (the "ALJ") to deny Plaintiff's application for disability insurance benefits on the ground that Plaintiff is not disabled within the meaning of the Social Security Act ("SSA"), 42 U.S.C. § 423 *et seq.* The Court referred the case to Magistrate Judge Paul E. Davison ("Judge Davison"), pursuant to 28 U.S.C. § 636(b)(1)(A). (Dkt. No. 5.) Plaintiff and Commissioner cross-moved for judgment on the pleadings. (Pl.'s Not. of Mot.

(Dkt. No. 9); Comm'r's Not. of Mot. (Dkt. No. 11).)  Judge Davison issued a Report and Recommendation (the "R&R"), recommending that the Court deny Plaintiff's motion and grant the Commissioner's cross-motion.  (R&R 23 (Dkt. No. 15).)  Plaintiff filed objections to the R&R on May 10, 2018.  (Pl.'s Obj. to R&R ("Pl.'s Obj.") (Dkt. No. 16).)  The Commissioner filed a response on July 6, 2018.  (Comm'r's Resp. to Pl.'s Obj. ("Comm'r's Resp.") (Dkt. No. 19).)

For the reasons discussed below, the Court adopts the R&R in its entirety, granting Defendant's Cross-Motion for Judgment on the Pleadings, and denying Plaintiff's Motion for Judgment on the Pleadings.  Accordingly, the decision of the ALJ is affirmed.[1]

## I.  Discussion

### A.  Standard of Review

#### 1.  Review of Report and Recommendation

A district court reviewing an R&R addressing a dispositive motion "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  Pursuant to § 636(b)(1) and Fed. R. Civ. P. 72(b), parties may submit objections to the R&R.  The objections raised must be "specific" and "written," and must be filed "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to an R&R, the district court reviews de novo those portions of the R&R to which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court "may adopt those portions of the. . . [R&R] to which no 'specific

_____

[1] The ALJ issued a decision denying Plaintiff's claim on September 11, 2015.  (Admin. Rec. ("A.R.") 51–69 (Dkt. No. 7).)  Plaintiff's request for review was denied on March 9, 2017 (A.R. 1–7), thus rendering the ALJ's decision the final decision of the Commissioner.

objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)); *Garcia v. Lee*, No. 11-CV-1803, 2018 WL 2268129, at *1 (S.D.N.Y. May 17, 2018) (same). Objections raised "that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke de novo review of the [R&R]." *Vega v. Artuz*, No. 97-CV-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002). Such arguments are considered "frivolous, general, and conclusory." *Id.*

## 2. Review of a Social Security Claim

In reviewing an ALJ's determination on a Social Security claim, it is not the function of a reviewing court to "determine de novo whether [the claimant] is disabled." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2013 (citation, alterations, and quotation marks omitted)); *Hernandez v. Berryhill*, No. 17-CV-5891, 2018 WL 6649620, at *8 (S.D.N.Y. Dec. 19, 2018) (same). Rather, the Court is "limited to determining whether the [ALJ's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)). A court may overturn an ALJ's determination only where it is "based upon legal error" or "not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citation omitted). "Substantial evidence" is "more than a mere scintilla," and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In considering whether substantial evidence supports the ALJ's

determination, the reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera*, 697 F.3d at 151 (citation and quotation marks omitted). Where the ALJ's factual findings are supported by substantial evidence, those findings "shall be conclusive." 42 U.S.C. § 405(g). Accordingly, "once an ALJ finds facts," the court may "reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (citation and quotation marks omitted). In other words, "[i]f evidence is susceptible to more than one rational interpretation, the [ALJ's] conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

Under the SSA, a claimant is considered "disabled" when such person lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is eligible to receive disability benefits if the impairment suffered is of "such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The ALJ evaluates a claimant's eligibility for disability insurance benefits pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner

will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citation omitted); *see also* 20 C.F.R.

§ 404.1520(a)(4)(i)–(v). "The claimant bears the burden of proof on the first four steps, while the [Commissioner] bears the burden on the last step." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At the last step, the Commissioner must prove that "that there is other gainful work in the national economy that [the claimant] could perform." *Kamerling v. Massanari*, 295 F.3d 206, 210 (2d Cir. 2002) (citation omitted); *see also* 20 C.F.R.

§ 404.1560(c)(2). If the ALJ determines that "significant numbers of jobs exist in the national economy that the claimant can perform," *McIntyre*, 758 F.3d at 151, the ALJ must deny disability insurance benefits to the claimant, *see* 20 C.F.R § 404.1520(a)(4)(v).

B. Analysis

The Court adopts the recitation of facts as set forth by Judge Davison. (R&R 1–13.) The Court assumes the Parties' familiarity with the facts and repeats only those facts relevant to consideration of the objections to the R&R raised by Plaintiff.

There is no dispute as to the first three steps of the five-step analysis for determining disability. At the first step of the inquiry, the ALJ determined that Plaintiff had not performed substantial gainful activity since July 2013. (A.R. 56 (Dkt. No. 7).) At step two, the ALJ found that Plaintiff's medical issues, including moderate bilateral osteoarthritis of the knees, obesity, dyspnea, inguinal hernia, depression, and schizoaffective disorder, constituted "severe"

impairments, while Plaintiff's diabetes, incontinence, and liver disease did not. (A.R. 56.) At step three, the ALJ determined that Plaintiff's impairments, whether considered individually or together, did not "meet[] or medically equal[] the severity of one of the listed impairments" in the SSA regulations. (*Id.* at 57 (referring to the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.)[2]

At step four, the ALJ considered the "entire record," and found that Plaintiff retained the residual functional capacity ("RFC") to perform

> light work as defined by 20 C.F.R. § 404.1567(b) except for the fact that [Plaintiff] is able to communicate and read in English but cannot write in English, can occasionally climb stairs, kneel, crouch, stoop, and crawl, would require a sit/stand option hourly taking one or two minutes to change positions, can occasionally interact with co-workers, supervisors, and the public, and can occasionally tolerate changes in the workplace.

(*Id.* at 62.)[3]

Moving to step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.* at 65.)[4] In the R&R, Judge Davison

---

[2] In making the step-three determination, the ALJ considered Plaintiff's physical and mental impairments. In particular, the ALJ considered Listings 1.02 (joint dysfunction), 12.03 (schizophrenia spectrum and other psychotic disorders), and 12.04 (depressive and related disorders), as well as Plaintiff's obesity. (A.R. 57–58.) The ALJ also considered Plaintiff's activities of daily living (shopping, dressing himself, and doing other chores), his social functioning (talking and getting along with others), his concentration, persistence or pace (ability to take public transportation, inability to manage money, difficulty paying attention, difficulty finishing what he starts, and memory difficulties), and episodes of decompensation. (*Id.* at 58.) The ALJ further considered Plaintiff's major depressive disorder with psychotic features and his treatment history. (*Id*. at 59–62.)

[3] "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by [her] impairments." *Selian*, 708 F.3d at 418.

[4] In making the step-five determination, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity. (A.R. 65.) Plaintiff had worked as a doorman in the past, which was substantial gainful activity. (*Id*. at 64.) Plaintiff was 45 years old on the alleged disability onset date, which is defined as a younger individual. (*Id*. at 65.) Plaintiff also

concluded that the ALJ did not err by (1) failing to give the opinion of Plaintiff's treating physician controlling weight and (2) discounting Plaintiff's credibility regarding his subjective statements about his pain.  (R&R 15–23.)  Plaintiff objects to each conclusion.  (*See generally* Pl.'s Obj.)  The Court finds that these objections are sufficiently detailed to allow meaningful de novo review of the R&R.  *See Vega*, 2002 WL 31174466, at *2.  This Court addresses each issue separately.

### 1.  The Treating Physician's Rule

#### a.  Applicable Law

The Social Security Administration "recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  Under this rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  Consequently, an ALJ reviewing a claim for disability benefits must likewise generally give "deference to the medical opinion of a claimant's treating physician."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted).  However, "the opinion of the treating physician is *not* afforded controlling weight where" the opinion is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Id.* (emphasis added) (citation omitted); *see also Bavaro v. Astrue*, 413 F.

---

had at least a high school education and was able to communicate in English.  (*Id.*)  A vocational expert testified that an individual with Plaintiff's characteristics would be able to perform the requirements of some light range of work and sedentary range of work.  (*Id.* at 66.)  Taken together, the ALJ concluded that work exists in significant numbers in the national economy to which Plaintiff could make a successful adjustment.  (*Id.*)

App'x 382, 384 (2d Cir. 2011) (same); *Illenberg v. Colvin*, No. 13-CV-9016, 2014 WL 6969550, at *20 (S.D.N.Y. Dec. 9, 2014) ("When a treating physician's opinion is internally inconsistent or inconsistent with other substantial evidence in the record, the ALJ may give the treating physician's opinion less weight." (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999))).

If the ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider a number of factors in determining how much weight the opinion is due, including the frequency of examination and the length, nature, and extent of the treatment relationship; the evidence in support of the opinion; the opinion's consistency with the record as a whole; whether the opinion was from a specialist; and any other factors that "tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ need not recite each factor. *See Halloran*, 362 F.3d at 32 (concluding that "the substance of the treating physician rule was not traversed" even though it was "unclear on the face of the ALJ's opinion whether the ALJ considered (or even was aware of) the applicability of the treating physician rule"); *see also Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." (citation omitted)).

b. Analysis

The ALJ declined to afford the opinion of Dr. Joseph Charles, M.D. ("Dr. Charles"), the treating physician, controlling weight. The R&R addressed this issue and concluded that, because Dr. Charles' opinion conflicted with both his own treatment notes and the overall record, the ALJ did not err in her determination. (R&R 18–19.) Because of the detail with which the ALJ explained and considered the treatment notes and the Mental Impairment Questionnaire

completed by Dr. Charles, Judge Davison correctly found that the ALJ "was not obligated to award [Dr. Charles'] opinion controlling weight." (*Id.* at 19.)

Judge Davison relied on several factors to uphold the ALJ's determination to afford Dr. Charles' opinion less weight. (R&R 17–19.) For example, the ALJ considered "the length of Plaintiff's treatment relationship with Dr. Charles, the frequency of examination, the medical support for the treating physician's opinion, and the consistency of the opinion with the record as a whole." (*Id.* at 17.) Judge Davison focused on Dr. Charles' own treatment notes. (*Id.* at 18.) These treatment notes "reveal[ed] a significantly less severe picture of Plaintiff's symptoms than the boxes Dr. Charles checked in the Mental Impairment Questionnaire." (*Id.*) After reviewing the medical record considered by the ALJ, Judge Davison concluded that Dr. Charles' treatment notes are "consistently unremarkable and indicate that Plaintiff's primary issue was financial stress due to his lack of employment and that Plaintiff was cooperative, with normal speech, neutral mood, appropriate affect, and denies having any delusions of hallucinations." (*Id.* at 19.)

Further, it is evident from the record that the ALJ, in deciding the amount of weight that should be afforded Dr. Charles' opinion, considered Plaintiff's medical history with Dr. Charles in detail. The ALJ noted that Dr. Charles had treated Plaintiff for over six years. (*See* A.R. 59, 305–52 (Dr. Charles' treatment notes).) Dr. Charles determined that Plaintiff has a history of schizoaffective disorder and prescribed him with Risperdal, Geodon, and Remerson. (*Id.* at 59, 305–06.) During a December 2, 2009 examination, notably before the relevant period of disability, Dr. Charles opined that Plaintiff was calm and cooperative, and that his psychomotor activity and affect were appropriate, his speech was fluent and spontaneous, his thought process was logical and coherent, and that he was oriented in all spheres and presented no hallucinations. (*Id.*) In December 2009, Dr. Charles gave Plaintiff a Global Functioning Assessment ("GAF")

score of 61–70. (*Id*.)[5] On January 17, 2012, Dr. Charles diagnosed Plaintiff with schizoaffective disorder, depressed type, in remission. (*Id*. 59, 307.) In November 2013, Dr. Charles indicated that Plaintiff was cooperative and presented normal speech, appropriate affect, clear thoughts, perceptions, and cognitive function, but also a sad mood and an intense preoccupation with financial difficulties. (*Id*. at 60, 319.) In January 2014, Dr. Charles noted that Plaintiff was calm, verbal, and cooperative, presented appropriate affect, denied hallucinations, and was oriented in all spheres. (*Id*. at 61, 325.) In March 2014, Dr. Charles noted that Plaintiff claimed to hear voices and see the heads of people in his carpet and presented a constricted affect, tense mood, and auditory and visual hallucinations. (*Id*. at 61, 331.) However, Dr. Charles also indicated that Plaintiff was cooperative and that his speech was coherent. (*Id*.) In April 2014, Plaintiff claimed to feel better and to not hear the voices anymore. (*Id*. at 61, 334.)

Additionally, the ALJ cited to the Mental Impairment Questionnaire that Dr. Charles completed on behalf of Plaintiff on August 7, 2015. (*Id*. at 60, 512–16.) The ALJ considered that Dr. Charles had, using the Questionnaire, assessed that Plaintiff experienced "depressed mood, feelings of guilt or worthlessness, hostility, irritability, decreased energy, intense and unstable interpersonal relationships, anhedonia, pervasive loss of interest, social withdrawal or

_____

[5] The GAF is a rating of an individual's overall level of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," and is used to help plan treatment, measure its impact, and predict its outcomes. The GAF score is assessed by using the GAF scale, which provides ratings in ten ranges from 1–100 with higher scores reflecting greater functioning. A GAF of 51–60 represents moderate symptoms, including flat affect, circumstantial speech, and occasional panic attacks, and moderate difficulty in social, occupational, or school functioning. A GAF of 61–70 represents some mild symptoms, including depressed mood and mild insomnia, and some difficulty in social, occupational, or school functioning, including occasional truancy, or theft within the household. However, persons in this range generally functioning well and may have meaningful relationships. (R&R 2 n.1; *id*. at 4 n.2 (citing *American Psychiatric Association*, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32–35 (4th ed. 2000)).)

isolation, difficulty concentrating, auditory hallucinations and paranoia." (*Id*. at 60, 513.) Dr. Charles also indicated that Plaintiff "did not have low intellectual functioning and that his psychiatric condition did not exacerbate his pain or other physical symptoms." (*Id*. at 60, 513–14.) On this evaluation, Dr. Charles assigned Plaintiff a GAF score of 57. (*Id*. at 60, 512.) The ALJ also recited these results, and stated that:

> [Plaintiff] has moderate difficulties in remembering locations and work like procedures and one to two step instructions, performing activities within a schedule, sustaining ordinary routine without supervision, making simple work relate[d] decisions, interacting appropriately with the public, getting along with coworkers or peers, maintaining socially appropriate behavior, adhering to basic standards of neatness, being aware of hazards and taking appropriate precautions, traveling to unfamiliar places or using public transportation, setting realistic goals or making plans independently and marked limitations in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention without rest periods, accepting instructions and responding appropriately to criticism from supervisor[s], and responding appropriately to work place changes.

(*Id*. at 60, 515.) Dr. Charles also opined that Plaintiff would be absent from work more than three times per month. (*Id.* at 60, 516.)

The ALJ afforded Dr. Charles' opinion "some weight to the extent that [Plaintiff] has moderate and marked limitation in some areas of functioning." (*Id.* at 60.) Although the ALJ did not expressly state that Dr. Charles' opinion was inconsistent with his own treatment notes, as Judge Davison explains, the ALJ explicitly detailed both Dr. Charles' treatment notes and his completed Questionnaire and showed the disparity between them. (R&R 19.) Throughout several years of treatment, Dr. Charles indicated that Plaintiff was coherent, cooperative, had normal-functioning speech, and had appropriate affect, clear thoughts, perceptions, and cognitive function. (R&R 18 (citing A.R. 314, 317–18).) These treatment notes paint a far less severe picture of Plaintiff's functional abilities than those presented on the findings on the Questionnaire, pursuant to which Dr. Charles indicated that Plaintiff could not interact

appropriately with the public and had difficulty maintaining attention, understanding, remembering, and carrying out instructions. Due to these inconsistencies, it was appropriate to afford Dr. Charles' opinion only "some weight" as opposed to "controlling weight." *See Austin D. v. Comm'r of Soc. Sec*., No. 17-CV-881, 2019 WL 185831, at *6 (N.D.N.Y. Jan. 14, 2019) (declining to give treating physician's opinion controlling weight where the clinical findings showed that the plaintiff was not as limited as the opinion indicated); *Viteritti v. Colvin*, No. 14-CV-6760, 2016 WL 4385917, at *12 (E.D.N.Y. Aug. 17, 2016) (finding that the ALJ did not err in granting little weight to the opinion of the plaintiff's treating psychological sources, as these opinions were inconsistent with the treatment record); *Diaz v. Comm'r of Soc. Sec*., No. 13-CV-7282, 2015 WL 1499488, at *12 (S.D.N.Y. Mar. 31, 2015) (finding that "[t]he report and questionnaire produced by [the treating physician] [was] facially inconsistent with. . . the remainder of his treatment notes"); *Thompson v. Colvin*, No. 12-CV-7024, 2014 WL 7392889, at *2 (S.D.N.Y. Dec. 29, 2014) (affirming ALJ's decision to not give controlling weight to treating physician's opinion where her opinion was inconsistent with her own contemporaneous treatment notes and with other substantial evidence in the record); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7–8 (2d Cir. 2017) (affirming ALJ's decision to not give controlling weight to treating physician's opinion because it "contained internal inconsistencies" and "substantial evidence contradict[ed]" it); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (affirming ALJ's decision not to give controlling weight to treating physician's opinion where the physician's treating notes "directly contradict[ed] [his]" opinion).

In deciding to afford Dr. Charles' opinion less than controlling weight, the ALJ also cited to the findings of other medical professionals who had either personally evaluated Plaintiff, or reviewed his medical record, and who reached different conclusions than did Dr. Charles. (A.R.

60–62.)  For example, the ALJ discussed the diagnosis of Dr. Arthur Weiner ("Dr. Weiner"),

Plaintiff's primary care provider, who in October 2013 noted that Plaintiff's depression had

improved, and that Plaintiff was alert and oriented.  (*Id.* at 60, 280.)  The ALJ also considered

the evaluation of Dr. Lucy Kim ("Dr. Kim"), a state agency consultative examiner, who assessed

Plaintiff as being cooperative and showing adequate social skills and overall presentation, and

exhibiting normal behavior.  (*Id.* at 61, 275.)  The ALJ also considered Dr. Kim's conclusion that

Plaintiff was oriented in all spheres, his concentration was intact, he presented coherent and goal

directed thought process with no evidence of hallucinations, delusions or paranoia, his intelligent

functioning was average, but recent and remote memory skills were only mildly impaired.  (*Id.* at

61, 275–76.)  Plaintiff was diagnosed by Dr. Kim as experiencing major depressive disorder,

mild with psychotic features.  (*Id.* at 61, 276.)[6]

    In further support of her decision to grant Dr. Charles' opinion only "some weight," the

ALJ reasoned that the GAF scores were "snapshot assessments" that "represent a subjective

interpretation of [Plaintiff's] general functioning at the particular time of the assessment."  (*Id*. at

60.)  The vagueness and subjectivity of the GAF score, in addition to the fact that Dr. Charles'

opinion was inconsistent with his own treatment notes and with the other medical expert

assessments of Plaintiff, amply supported the ALJ's decision not to give Dr. Charles' opinion

controlling weight.

    Plaintiff argues that the ALJ erred by not specifically indicating which of Dr. Charles'

findings were granted partial weight.  (Pl.'s Obj. 2.)  However, because the evidence in the

---

[6]  The ALJ also considered the opinion of Dr. Thomas Harding, Ph.D ("Dr. Harding"), a state agency medical consultant, who concluded that Plaintiff's mental impairments were non-severe and did not significantly limit Plaintiff's physical or mental ability to do basic work activity.  (A.R. 62, 95–101.)

record makes clear the ALJ's rationale, the ALJ was not required to "mention[] every item of testimony presented to [her] or . . . explain[] why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Austin D.*, 2019 WL 185831, at *9 (holding that "when the evidence of record permits the court to glean the rationale in an ALJ's decision, [s]he need not reconcile every piece of evidence or explain why [s]he found it unpersuasive" (citing *Cichocki*, 534 F. App'x at 75 and *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011))). Plaintiff also argues that the ALJ erred by failing to cite to any specific medical evidence to support the RFC assigned to Plaintiff. (Pl.'s Obj. 7–8.) This is an incorrect assessment of the ALJ's opinion. As the Commissioner correctly argues, (Comm'r's Resp. 3), the ALJ, in determining Plaintiff's RFC, clearly considered the opinions and treatment notes provided by not only Dr. Charles, but also Dr. Weiner, Dr. Kim, and Dr. Harding. (A.R. 59–62.) *See Punch v. Barnhart*, No. 01-CV-3355, 2002 WL 1033543, at *12 (S.D.N.Y. May 21, 2002) (finding that the opinions of consultative physicians and non-examining medical experts can serve as substantial evidence and override the opinion of the treating physician).

Accordingly, the Court agrees with Judge Davison and finds substantial evidence in support of the ALJ's decision not to give controlling weight to the opinion of Dr. Charles.

### 2. Plaintiff's Credibility

#### a. Applicable Law

"Evidence of pain is an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating" whether, at step four of the sequential analysis, a claimant has the RFC to perform his or her past relevant work. *Meadors v. Astrue*, 370 F. App'x 179 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929. In calculating

RFC, "the ALJ is required to take the claimant's report of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id.* (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

To evaluate a claimant's credibility, the ALJ must follow a two-step process. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted). Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* (citation, alterations, and quotation marks omitted). In so doing, the ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 WL 4273321, at *12 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370–71 (2d Cir. 2012)). Where the other medical evidence is not consistent with the claimant's subjective statements, the ALJ must consider seven additional factors:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors

concerning the claimant's functional limitations and restrictions as a result of the pain.

*Id.* at *12 & n.21 (quoting 20 C.F.R. § 404.1529(c)(3)).

Should the ALJ decide to reject or discount a claimant's testimony on credibility grounds, the ALJ must "explain the decision . . . with sufficient specificity to enable the reviewing Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether the ALJ's decision is supported by substantial evidence." *Kuchenmeister v. Berryhill*, No. 16-CV-7975, 2018 WL 526547, at *12 (S.D.N.Y. Jan. 19, 2018) (citation, quotation marks, and alterations omitted); *see also Lugo v. Apfel*, 20 F. Supp. 2d 662, 664 (S.D.N.Y. 1998) ("Conclusory determinations [by an ALJ] . . . leave a reviewing court no basis on which to determine whether the proper factors were considered and the appropriate legal standards applied.").

### b. Analysis

The ALJ concluded that Plaintiff "has a greater sustained capacity than he alleges" and that Plaintiff's "subjective complaints and alleged limitations are not fully persuasive." (A.R. 64.) Judge Davison recommended that "the Court [not] disturb the ALJ's credibility finding," because the "ALJ's credibility determination was supported by substantial evidence." (R&R 23.)

Judge Davison correctly concluded that the ALJ's determination was supported by substantial evidence. As a general matter, the ALJ considered Plaintiff's ability to perform daily activities, Plaintiff's statements as to activities that aggravated his symptoms, and the effectiveness of certain treatments in treating those symptoms. (R&R 21; A.R. 64, 276, 319, 711–12, 715.)

To begin, the ALJ indicated that she assessed Plaintiff's daily activities in making a credibility determination. The ALJ pointed to statements made in his testimony, as recorded by Dr. Kim. (A.R. 273–77.) For example, Plaintiff indicated that he is able to dress, bathe, and

groom himself, (*id*. at 275), and that he is able to clean and go shopping by himself, (*id*.). Plaintiff's statements regarding his daily activities are supported by substantial evidence in the record, specifically, by the Function Report completed by Plaintiff. (*Id*. at 184–94.) In this report, Plaintiff indicated he has no problem with personal care, and needs no reminders to help him take care of his personal needs and grooming. (*Id*. at 187–88.) Plaintiff also indicated that he is able to prepare his own meals or food daily, (*id*. at 188), and although he "rarely clean[s]," he indicated that he does not need help in doing so, (*id*. at 189). Plaintiff further indicated that he is able to go shopping in stores for his personal care and groceries. (*Id*. at 190.) Finally, Plaintiff indicated that he can follow both spoken and written instructions, and has no problem "getting along with bosses, teachers, police, landlords, or other people in authority." (*Id*. at 193.)

The ALJ also cited to the fact that Plaintiff "returned to work for five weeks as a doorman" and kept his "name on a list to be called back for future employment." (*Id.* at 64.) Plaintiff, in his conversations with Dr. Charles, indicated that had been actively looking for a job, and that his difficulty in finding a job was because "[y]ou need to know somebody," (*id*. at 319), not, as Judge Davison notes, because of disability, (R&R 21).

Plaintiff argues that his ability to "sporadically perform[] daily activities while at home and unsuccessfully attempt[] to return to work does not mean that he ha[s] the capacity to work 8 hours a day, 40 hours a week on a sustained basis." (Pl.'s Obj. 8.) However, as Judge Davison noted, Plaintiff's "capacity to perform daily activities," (R&R 21), in addition to his "ability to return to work as a substitute doorman for more than five weeks," (*id*.), along with his statement that his difficulties in finding a job were because "[y]ou need to know somebody," (*id*.), support the ALJ's determination that Plaintiff has a "greater sustained capacity than he alleges," (A.R. 64). The Commissioner also correctly argues that "the ALJ properly considered Plaintiff's work

as a doorman, filling in for people on vacation, his continuing to look for work, and his other activities, such as painting two rooms in his house with his wife, vacuuming, washing, dishing, shopping, and using public transportation . . . in assessing his credibility," in accordance with the SSA regulations, which provide that a "claimant's daily activities are an appropriate factor to consider in assessing the credibility of a claim of disability."  (Comm'r's Resp. 6.)  *See Rivas v. Berryhill*, No. 17-CV-5143, 2018 WL 4666076, at *14 (S.D.N.Y. Sept. 27, 2018) (finding that the ALJ's credibility determination properly including consideration of the plaintiff's daily activities, including performing personal hygiene, cleaning, doing laundry, going shopping, and traveling using public transportation); *Davis v. Berryhill*, No. 17-CV-7052, 2019 WL 989338, at *16 (S.D.N.Y. Mar. 1, 2019) (upholding ALJ's credibility finding where the plaintiff's claimed pain was not consistent with her testimony of being able to perform self-care and take public transportation as needed), *adopted by* 2019 WL 1244929 (Mar. 18, 2019); *Bueno v. Comm'r of Soc. Sec.*, No. 17-CV-1847, 2018 WL 5798583, at *15 (S.D.N.Y. Aug. 20, 2018) (finding that the ALJ properly discounted the plaintiff's credibility as her daily activities demonstrated a greater capacity for work than alleged).  The ALJ's reference to the specific evidence in the record that contradicts Plaintiff's allegations provides sufficient evidence for the Court to "glean the [ALJ's] rationale" in making her credibility determination.  *Mongeur*, 722 F.2d at 1040; *see also Kuchenmeister*, 2018 WL 526547, at *12 ("When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." (citation and quotation marks omitted)).  Accordingly, there is an insufficient basis upon which to second-guess the ALJ's credibility determination.  *See Alejandro v. Comm'r of Soc. Sec.*, No. 17-CV-2906, 2018 WL 4328839, at *4 (S.D.N.Y. Sept. 11, 2018) (upholding credibility determination where "the ALJ offered

reasons why he discounted certain evidence that could have substantiated [the plaintiff's] claims" and "determined that [the plaintiff's] own statements about her daily conduct were inconsistent with her allegations of disability"); *see also Wright v. Berryhill*, 687 F. App'x 45, 49 (2d Cir. 2017) (upholding ALJ's finding that the plaintiff had "diminished credibility" in light of his "range of activities," "conservative course of . . . treatment," "employment in physical labor in close temporal proximity to the dates of claimed disability," and his "representation of readiness and ability to work in connection with his receipt of unemployment benefits").

Second, the ALJ considered the extent to which treatment could alleviate Plaintiff's symptoms, concluding that "conservative treatments" could treat Plaintiff. (A.R. 63–64.) Plaintiff disputes the characterization of his treatment as "conservative." (Pl.'s Obj. 9.) Plaintiff argues that the ALJ erred because he was prescribed Haldol, a strong antipsychotic that can potentially cause severe side effects. (*Id*. at 10.) Plaintiff also argues that, in the context of psychiatric impairments, treatment ordinarily consists of medication and therapy. (*Id*.) However, the ALJ noted that, although Plaintiff claimed that he experienced "stiffness" and "shakes" because of his medications, the checklist that Plaintiff cites does not mention side effects like "stiffness" or "shakes." (A.R. 711–12.) On a subsequent page in the same report, Dr. Charles indicated that Plaintiff experienced drowsiness and stiffness, but attributed these symptoms to all four medications, not specifically to Haldol. (*Id*. at 715.) Judge Davison thus correctly concluded that nothing in the record demonstrates that Plaintiff suffered from "shakes" as a result of Haldol, nor is there any indication that Plaintiff suffered from tardive dyskinesia, which is a potential side effect of the medications. Judge Davison additionally noted that Dr. Charles consistently reported that Plaintiff "was not suffering any side effects from his medications." (R&R 22; A.R. 311–49 (referring to Dr. Charles' progress notes)); *see Nunez v.*

*Colvin*, No. 15-CV-4957, 2017 WL 684228, at *16–17 (S.D.N.Y. Feb. 21, 2017) (finding that although the plaintiff testified to side effects, there was no mention of such side effects in medical records).

"Conservative treatment" has been characterized as "medication but not hospitalization," *Torres v. Colvin*, No. 13-CV-8224, 2015 WL 1218705, at *9 (S.D.N.Y. Mar. 17, 2015), which would indicate that Dr. Charles' prescription of Haldol was a conservative treatment as opposed to a more aggressive treatment. Although it is true that an ALJ "may not impose [her] . . . notion[] that the severity of a[n] . . . impairment directly correlates with the intrusiveness of the medical treatment ordered," *Burgess*, 537 F.3d at 129 (citation, original alterations, and quotation marks omitted), it is evident here that the ALJ considered Plaintiff's treatment collectively with the other evidence in the record. Even if Plaintiff's treatment was not considered "conservative," this finding would not be outcome-determinative in light of the substantial evidence in the record which supports the ALJ's determination that Plaintiff is not as severely impaired as he alleges. *See Kessler v. Colvin*, 48 F. Supp. 3d 578, 595 (S.D.N.Y. 2014) (declining to disturb ALJ's credibility determining, noting that "even if the ALJ incorrectly interpreted [the relevant medical record], his credibility determination still deserves deference because it clearly is based on more than just [that record]").

Accordingly, the Court agrees with Judge Davison and finds that the ALJ's credibility determination is neither "based upon legal error" nor unsupported by "substantial evidence." *See Rosa*, 168 F.3d at 77.

## II. Conclusion

For the foregoing reasons, the Court adopts Judge Davison's R&R in its entirety, denies

Plaintiff's Motion for Judgment on the Pleadings, and grants Defendant's Cross-Motion for

Judgment on the Pleadings.

The Clerk of the Court is respectfully directed to terminate the pending motions, (Dkt.

Nos. 9, 11), enter judgment for Defendant, and close this case.

SO ORDERED.

Dated:   March 29 , 2019
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE